FILED
JUN 24 2005
MICHAEL W DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHEN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MELVYN MARKON, | ) |
| Plaintiff, | ) |
| vs. | ) No. 05C 3715 |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, and CHICAGO PUBLIC SCHOOLS, | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Melvyn Markon, by his attorneys Miller & Sweeney LLC, complains against defendants, Board of Education of the City of Chicago, Chicago School Reform Board of Trustees, and Chicago Public Schools *(hereinafter, collectively "CPS")*, as follows:

### Nature of the Action

1. This is an action brought pursuant to the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §626, et seq. for age discrimination.

### Parties

2. Markon, age 68, is an individual residing in the County of Cook, State of Illinois, and within the jurisdiction of the Court.

3. Defendants, Board of Education of the City of Chicago and Chicago School Reform Board of Trustees, operate the defendant, Chicago Public Schools.

4. CPS is principally engaged in the business of educating children in the City of Chicago through provision and management of education services and facilities.

5. At all relevant times, CPS employed approximately 40,000 people.

## Jurisdiction and Venue

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter involves a federal question based upon the ADEA.

7. This Northern District of Illinois, Eastern Division, is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and Division in which Markon resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

## Procedural Prerequisites

8. On November 17, 2004, Markon filed a charge of discrimination against defendant, CPS, with the Equal Employment Opportunity Commission ("EEOC").

9. More than sixty days have elapsed since Markon filed his charge with the EEOC.

10. Markon has not received notification from the EEOC as to any of its findings or conclusions as of the time of the filing of this Complaint.

## Factual Background

11. Markon was born on September 24, 1936, and was 68 years of age at the time he filed his charge of discrimination.

12. Markon attended the University of Illinois and graduated in 1958 with a B.S. in accounting.

13. Markon also attended DePaul University Law School for one year following his graduation from Illinois.

14. In early 2002, Markon started interviewing with Ken Gotsch, the former CFO of CPS, and Timothy Martin, former operations chief of CPS, several times for an executive level

position with CPS. This interviewing process with Gotsch encompassed several meetings, numerous emails, and phone calls.

15. Gotsch told Markon he would get him an executive level position commensurate with Markon's experience and education, paying between $60,000-75,000 per year. Gotsch asked Markon if he would accept the position of Assistant Payroll Director. Markon said he would.

16. Sometime after the last interview Gotsch called Markon and informed Markon that CPS had a position for Markon, but that at this point the pay was lower than what Gotsch had previously indicated.

17. Gotsch offered Markon the position of payroll adjustment clerk and informed Markon that the position would pay approximately $27,000. Markon said that was not in line with what he had interviewed for, nor what Gotsch had promised, but Gotsch indicated that once Markon was in the door he would get him into a position in line with his experience, ability and salary requirements.

18. In reliance on Gotsch's representation regarding the executive level position, Markon took the lower paying job and started working at CPS as a Payroll Adjustment Clerk I, on January 17, 2003. Markon made $27,300.00 when he started.

19. Markon served as a payroll adjustment clerk for CPS through May 21, 2004.

20. As a Payroll Adjustment clerk, Markon's duties included, but were not limited to:

>Enter sub warrant cancellations into the system;
>Receive all pulled checks from Medill and schools for processing;
>Deposit all unearned, unclaimed and deceased checks;
>Keep detailed records of all unearned, unclaimed and deceased checks;
>Conduct audits for possible fraudulent paychecks;
>Send letters to school principals asking to justify certain questionable checks;
>Prepare docking letters to CPS employees to retrieve sums owed;

3

      Process returned and undeliverable checks and stubs;
      Receive phone calls regarding undeliverable checks and stubs;
      Release valid undeliverable checks and stubs after proper investigation;
      Records and file all UNCF donations received from schools, and central and regional offices;
      Miscellaneous auditing as assigned.

21. For over a year while Markon was working as a payroll adjustment clerk, Markon was subjected to age based discriminatory comments on a regular and repeated basis.

22. Markon endured these comments in light of the promise by Ken Gotsch that Markon would receive the executive level position.

23. Markon was told that as an old person he should avoid the tendency old people have of trying to be pro-active and offer advice or opinions as a result of experience; that he looked pretty good for an old guy; that he should consider a hearing aid, even though Markon has no hearing impairment whatsoever. Markon was subjected to belittling comments regarding the color and genuineness of his hair, whether he needs naps or whether he would make it through any given day, and a variety of other statements.

24. These comments were made by or in front of management personnel.

25. On May 21, 2004, Markon was called into John Maiorca's office, the CFO for CPS. Maiorca and Michael Edwards, payroll director, told Markon that he was going to have to be let go as a result of a reduction in force due to budgetary constraints.

26. Markon's group of formerly four employees was already undermanned due to the retirement of another employee on May 1, 2004.

27. Markon's departure left his group with only two employees, while there were numerous other groups that had excess workers.

28. Markon had more seniority than other younger payroll employees that were not let go and had far more experience and education.

4

29. Markon never received a bad review and received standard raises.

30. Markon questioned both Maiorca and Edwards at this meeting about the logic behind the decision, but neither responded.

31. On information and belief, Markon alleges that two weeks after leaving CPS, the payroll department was able to add a new younger employee, 43 years old, at over $70,000.00 per year, even in light of the alleged reduction in force supposedly underway.

32. On information and belief, in October, 2004, CPS hired a person to work in the very same payroll group that Markon had worked in. The new employee was 26 years old when he started and was paid more when starting than Markon made after 17 months.

33. On information and belief, Markon alleges that the hiring process for the 26 year old in Markon's group was actively started in early July, 2004, just days after Markon's final paycheck was tendered on June 30, 2004, in spite of the alleged budgetary constraints, which allegedly led to Markon's termination.

## COUNT I
### (Age Discrimination)

34. Markon's age was a determining factor in Defendant, CPS's decision to terminate Markon.

35. Defendants knowingly and willfully discriminated against Markon on the basis of his age in violation of the ADEA.

WHEREFORE, plaintiff, MELVYN MARKON, respectfully requests that this Honorable Court enter judgment in favor of plaintiff and against defendants, and award the following relief:

a) Back and front pay, including but not limited to the value of the wages and benefits Markon should have received and would have continued to receive during his work expectancy;

b) Liquidated damages pursuant to 29 U.S.C. §626(b);

c) Attorneys fees and costs; and

d) Any and all other relief the Court may deem proper to effectuate the purposes of the ADEA.

## COUNT II
### (Oral Contract)

36. Markon repeats and realleges paragraphs 1-33 as if fully set forth in this Count II.

37. As an agent of CPS, Ken Gotsch offered Markon an executive level position with CPS paying $60,000-75,000 a year.

38. Markon accepted CPS's offer of employment.

39. Gotsch and CPS breached the agreement with Markon.

40. Markon was harmed as a result of CPS's breach.

WHEREFORE, plaintiff, MELVYN MARKON, respectfully requests that this Honorable Court enter judgment in favor of plaintiff and against defendants, and award plaintiff any and all damages he may prove after a trial on the merits, and any and all further relief the Court may deem fair and just.

## COUNT III
### (Promissory Estoppel)

41. Markon repeats and realleges paragraphs 1-33 as if fully set forth in this Count III.

6

42. As an agent of CPS, Ken Gotsch represented to Markon that if Markon took the position of Payroll Adjustment Clerk I, Gotsch would get Markon an executive level position commensurate with Markon's education, experience and salary requirements.

43. In reliance on Gotsch's representations, Markon ceased looking for further employment during the time he was waiting for Gotsch and CPS to place him, discontinued substantial planning for the opening of a new restaurant venture Markon had fully developed, and took the lower paying position of Payroll Adjustment Clerk I.

44. Gotsch, as an agent of CPS, was aware that Markon relied on Gotsch's representations that Markon would get an executive level position.

45. Gotsch, as an agent of CPS, intended that Markon rely on Gotsch's representations regarding the executive level position.

46. Markon substantially performed all terms of the agreement between the parties.

47. CPS never gave Markon the executive level position CPS agreed to provide.

WHEREFORE, plaintiff, MELVYN MARKON, respectfully requests that this Honorable Court enter judgment in favor of plaintiff and against defendants, and award plaintiff any and all damages he may prove after a trial on the merits, and any and all further relief the Court may deem fair and just.

Respectfully submitted,
MELVYN MARKON, Plaintiff

_____
One of Plaintiff's Attorneys

Robert D. Sweeney, Esq.
Matthew S. Miller, Esq.
Miller & Sweeney, LLC
111 W. Washington Street, Suite 1160
Chicago, Illinois 60602
312/384-0500